**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ALEXIS ANN JACOBS,**

**Plaintiff,**

**v.**

**Case No. 2:10-cv-912**
**Judge George C. Smith**
**Magistrate Judge Abel**

**ACACIA CHATTANOOGA VEHICLE AUCTION, INC., *et. al.*,**

**Defendants.**

**OPINION AND ORDER**

This matter is before the Court on the motion of Defendants Acacia Chattanooga Vehicle Auction, Inc. ("Acacia Chattanooga"), Acacia Automotive, Inc. ("Acacia Automotive"), and Steven L. Sample ("Sample"), for relief from the cognovit judgments entered by this Court on February 23, 2011, and corrected by a *Nunc Pro Tunc* Order filed July 26, 2011 (Doc. 28). For the reasons that follow, the Court **GRANTS** Defendants' motion for relief.

## I. Background

Sample is the president and CEO of Acacia Automotive, which owns several subsidiary automobile auction businesses. Sample formed Acacia Automotive after having worked in the automobile and truck industry for approximately 30 years and holding management positions for large automobile auction companies during the course of 15 years. In 2009, Acacia Automotive purchased a vehicle auction business located in Chattanooga, Tennessee, and created a subsidiary,

Acacia Chattanooga, to operate the new business. As part of this transaction, Acacia Chattanooga purchased assets from Chattanooga Auto Auction Limited Liability Company ("CAA"), established a lease with Auction Venture Limited Liability Company ("Auction Venture"), which owned the premises upon which the auction was operated, and received a line of credit from Plaintiff Alexis Ann Jacobs ("Jacobs" or "Plaintiff"), who owns Auction Venture and CAA. This line of credit, evidenced by a revolving loan note containing a cognovit provision, was guaranteed by Acacia Automotive and Sample. The guaranties also contained cognovit provisions. Furthermore, as part of the loan transaction, Acacia Automotive executed an agreement (the "stock pledge agreement") pledging all of the shares of Acacia Chattanooga to Jacobs as collateral for the loan.

In September 2010, Jacobs filed an action in this court, assigned Case No. 2:10-cv-863 (the "original cognovit action"), alleging default on the cognovit note, and suing on it and the guaranties. On the same day, Jacobs sent notice to Acacia Automotive and Sample asserting that, due to Acacia Chattanooga's alleged default upon the loan, she was exercising her right under the stock pledge agreement to vote the entirety of Acacia Chattanooga's stock. Jacobs thereupon elected Keith Whann as sole director of Acacia Chattanooga, and Whann subsequently elected himself as president of Acacia Chattanooga.

In October 2010, the parties stipulated to the dismissal of the original cognovit action without prejudice. On the same day as the filing of the stipulation of dismissal, Jacobs filed a substantively identical action in the Court of Common Pleas of Franklin County, Ohio. Jay McKirahan, Esq. ("McKirahan") appeared on behalf of Defendants Acacia Chattanooga, Acacia Automotive, and Sample pursuant to the warrants of attorney contained in the note and

guaranties, and confessed judgment. Franklin County Common Pleas Court Judge Stephen McIntosh signed the final judgment entry, but, before the judgment was docketed on October 12, 2010, the law firm of Thompson Hine LLP, purporting to act on behalf of all the defendants, removed the action to this Court and filed an "Amended Answer."[1] Jacobs moved for this Court to strike the purported Amended Answer, and McKirahan, purporting to act on behalf of Acacia Chattanooga, moved to remand this action to state court.[2]

On February 23, 2011, this Court denied the motion to remand and granted the motion to strike (Doc. 27). Finding no impediment to enter judgment in this cognovit action, the Court granted Jacobs judgment on the cognovit note against Acacia Chattanooga, and judgment on the guaranty agreement pertaining to the note against Acacia Automotive and Sample. *Id.* Two weeks later, Defendants filed a Motion for Relief from Cognovit Judgment pursuant to Federal Rule of Civil Procedure 60(b) (Doc. 28), and a Motion to Stay execution on the cognovit judgments pursuant to Federal Rule of Civil Procedure 62 (Doc. 29). On March 28, 2011, the Court granted the motion to stay the execution of the cognovit judgments, pending resolution of Defendants' Rule 60(b) motion (Doc. 31). In May 2011, and pursuant to Federal Rule of Civil

[1] Because the Franklin County trial court lacked jurisdiction to enter the cognovit judgment once the matter was removed, the Ohio Tenth District Court of Appeals vacated the judgment. *See Jacobs v. Acacia Chattanooga Vehicle Auction, Inc.*, No. 10AP-1071, 2011 WL 3210061 (Ohio Ct. App. July 28, 2011).

[2] In view of Jacobs' actions in asserting rights under the stock pledge agreement, the parties dispute the actual ownership and control of Acacia Chattanooga and correspondingly who has authority to represent this company in this litigation. Because resolution of this issue appears to hinge on the adjudication of other issues, such as whether an event of default occurred, whether the stock pledge agreement gave Jacobs the authority to elect Whann as sole director of Acacia Chattanooga, and whether the agreements themselves were procured by fraud, it will not be resolved at this time.

Procedure 60(a), Defendant moved for correction of the judgment amount ordered by this Court on February 23, 2011. The Rule 60(a) motion was unopposed, and the Court issued a *Nunc Pro Tunc* Order correcting the amount of the judgments (Doc. 41). The Court will now resolve Defendants' pending Rule 60(b) Motion for Relief from Cognovit Judgment.

**II. Standard of Review**

Defendants move for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b), which provides a mechanism for a defendant to challenge a final judgment under certain circumstances. Rule 60(b) does not directly set forth a standard for setting aside a cognovit judgment, and there is no federal common law on the issue. Ohio courts, however, have established such standards. Accordingly, Ohio law controls the standard for vacating the cognovit judgment entered in this case. *See Fifth Third Bank v. MacLaren*, No. 3:08-CV-02819, 2009 WL 3271364, at *4 (N.D. Ohio Oct. 9, 2009) (applying Ohio law to the issue of whether a cognovit judgment should be vacated).

Under Ohio Rule of Civil Procedure 60(B), a party seeking relief from judgment must demonstrate that he: 1) has a meritorious defense; 2) is entitled to relief under one of the grounds stated in 60(B); and 3) makes the motion within a reasonable time. *GTE Automatic Elec. Inc. v. ARC Industries, Inc.*, 351 N.E.2d 113, 113 (Ohio 1976). However, due to the "harsh results of the cognovit procedure, namely, that the defendant has never received a day in court or chance to be heard," a party seeking relief from cognovit judgment need only show that he has a meritorious defense and that his motion is timely raised. *Lykins Oil Co. v. Pritchard*, 862 N.E.2d 192, 197 (Ohio Ct. App. 2006). The movant must "allege operative facts with enough specificity to allow the trial court to decide whether a meritorious defense exists." *Advanced Clinical Management,*

*Inc. v. Salem Chiropractics Ctr., Inc.*, No. 2003CA00108, 2004 WL 57710, *2 (Ohio Ct. App. Jan. 12, 2004). These asserted facts must be more than mere conclusory allegations. *See Fifth Third Bank*, 2009 WL 3271364, at *4 (citing *Urbana College v. Conway*, 502 N.E.2d 675, 678 (Ohio Ct. App. 1985)). Such a party is not required, however, to prove that it will prevail on the defense. *Lykins Oil Co.*, 862 N.E.2d at 197-98. "Rather, the burden on the moving party is only to allege operative facts which would constitute a meritorious defense [or claim] if found to be true." *Fouts v. Weiss–Carson*, 602 N.E.2d 1231, 1233 (Ohio Ct. App. 1991).

Within the context of reviewing a party's motion for relief from cognovit judgment, however, a court must also be mindful of the principle that "[b]y definition, a cognovit provision cuts off every defense, except payment, which the maker of the note may have against enforcement of the note." *Tinnes v. Immobilaire IV, Ltd.*, No. 00AP-87, 2001 WL 122073, at *6 (Ohio App. 10th Dist. February. 13, 2001). "But '[t]he defense of non-default is not the only meritorious defense recognized by courts as being available to a cognovit judgment debtor seeking Civ. R. 60(B) relief.' " *Lykins Oil Co.*, 862 N.E.2d at 195 (citations omitted). As stated by the Ohio Third District Court of Appeals, "a meritorious defense [in the context of a cognovit judgment challenge] is one that goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note." *Nat'l Bank of Pandora v. Freed*, No. 5-03-36, 2004 WL 1489074, at *2 (Ohio App. 3rd Dist. July 6, 2004). Conversely, a "judgment on a cognovit note will generally not be vacated for reasons which do not encompass such matters of integrity and validity." *Id.*

Here, the motion for relief was filed two weeks after the Court granted the cognovit

judgments, and thus Plaintiff does not challenge the timeliness of the motion. At issue is whether Defendants have alleged a meritorious defense. Defendant Acacia Chattanooga asserts that it has at least six meritorious defenses, which are as follows: Jacobs' Complaint fails to state a claim on its face; Acacia Chattanooga did not default on the credit line; Acacia Chattanooga was fraudulently induced into purchasing the auction's assets and taking the loan; Jacobs did not afford Acacia Chattanooga notice and a reasonable opportunity to cure the supposed defaults, as required under the loan documents; Jacobs materially breached the loan agreement by acting in bad faith; and the loan agreement does not meet Ohio's statutory requirements for a cognovit judgment. Defendants Acacia Automotive and Sample assert that they have the same defenses as Acacia Chattanooga, as well as the defense that Jacobs never made the demand for payment required by the guaranties before she filed suit. Plaintiff argues that Defendants have failed to establish a meritorious defense.

The Court will first address whether Defendants demonstrate a meritorious defense by their assertion that they were fraudulently induced into the sale and the loan transaction. Because fraud in the inducement goes to the integrity and validity of the creation of the debt or note, it constitutes a meritorious defense that would justify relief from a cognovit judgment. *See, e.g., Davidson v. Hayes*, 590 N.E.2d 18 (Ohio Ct. App. 1990) (finding that trial court abused its discretion in denying party's motion for relief from cognovit judgment when said party presented evidence which supported defense of fraud in the inducement). Thus, the issue becomes whether Defendants allege operative facts of fraudulent inducement that would undermine the integrity and validity of the underlying loan agreement and corresponding guaranties.

A claim of fraud in the inducement arises when a party is induced to enter into an

agreement through fraud or misrepresentation. *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). To prove fraud in the inducement under Ohio law, a plaintiff must prove that the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment. *Id.* (citing *Beer v. Griffith*, 399 N.E.2d 1227, 1231 (Ohio 1980)). "A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract." *ABM Farms, Inc.*, 692 N.E.2d at 578.

The reliance on the representation must be justifiable, and the resulting injury must have been proximately caused by the reliance. *Williams v. Aetna Financial Co.*, 700 N.E.2d 859, 868 (Ohio 1998). To determine whether reliance is justifiable, courts look to various circumstances, including the nature of the transaction, the form and materiality of the representation, and the relationship of the parties and their respective means and knowledge. *Johnson v. Church of the Open Door*, 902 N.E.2d 1002, 1007 (Ohio Ct. App. 2008). Reliance on misrepresentations is not justifiable when the true facts are equally open to both parties or when the party had no right to rely on the representation. *Aetna Ins. Co. v. Reed*, 33 Ohio St. 283, 292 (1877).

Defendants assert that they were fraudulently induced into the sale, loan, and guaranty transactions based on misrepresentations made by CAA and Jacobs through her attorney and business partner, Whann. In support of their motion for relief, Defendants have submitted a declaration of Sample which details the facts surrounding Acacia Automotive's purchase of the automobile auction business in Chattanooga. This declaration was supplemented by a reply declaration of Sample submitted in response to Plaintiff's memorandum in opposition to Defendants' motion for relief. Sample's declarations set forth specific facts that would support a

finding that he and his company were fraudulently induced into purchasing the auction and entering the loan agreements and guaranties connected with that transaction. As it relates to alleged fraudulent inducement, Sample's declarations assert the following:

> In August 2009, CAA, through its Vice President, Whann, offered to sell the Auction Business to Acacia Automotive. Auction Venture, also through Whann as Vice President, would lease the Premises to Acacia Automotive.
>
> On August 10, 2009, and at other times thereafter and before the Sale closing, CAA and Whann made representations to Acacia Automotive regarding the operating costs and financial state of the Auction Business. CAA and Whann represented that the Auction Business had a positive cash flow and was profitable. CAA and Whann also represented monthly operating expenses of $158,344.41 and monthly revenues of $202,488.90, resulting in a monthly profit of $44,144.49 on an average basis. They represented that it was a good time for Acacia Automotive to purchase the Auction Business.
>
> Relying upon CAA's and Whann's representations, Acacia Automotive and Acacia Chattanooga entered into and closed the sale transaction.
>
> Acacia Automotive, Acacia Chattanooga, and I (collectively, "Defendants") have since discovered that the operating costs and financial status of the Auction Business represented by CAA and Whann were false and the operating costs had been materially understated. CAA was actually operating the Auction Business at a substantial loss and on a negative cash flow basis, in contrast to CAA's and Whann's representations. The actual monthly operating costs, which CAA and Whann had represented to be $158,344.41 per month were actually $297,532.00 per month.
>
> But for CAA's and Whann's misrepresentations, Defendants would not have entered into and closed the sale transaction or signed the credit line documents, including the Note and Guaranties.

(Doc. 28-1, Sample Mar. 9, 2011 Decl., ¶¶ 16-20). Sample's reply declaration further states as follows:

> [A]s an inducement for Acacia Automotive to purchase the assets of CAA and the Auction Business, Keith Whann provided Acacia Automotive with certain detailed financial and operating information of CAA and the Auction Business relative to income and expenses, all of which depicted the Auction Business to be profitable

> and cash flow positive, and he confirmed the financial information to be reliable.
>
> In April 2010, more than three months after Acacia Chattanooga took title to the assets of CAA and the Auction Business, Acacia Chattanooga and Acacia Automotive received newly created financial records of CAA for fiscal year 2009.
>
> At no time did Acacia Chattanooga or Acacia Automotive control the complete books and records of CAA or the Auction Business or prepare financials for CAA.
>
> Acacia Automotive and Acacia Chattanooga did not have full access to all of the books and records that reflected the true and accurate history of CAA and the Auction Business.

(Doc. 33-1, Sample Apr. 21, 2011 Decl., ¶¶ 5-8).

Plaintiff argues that any asserted reliance on alleged misrepresentations cannot be reasonable or justifiable in view of Sample's extensive experience in the automobile and truck industry, including years managing large auction companies. Additionally, Plaintiff argues that any reliance was not reasonable because Defendants operated the auction business, and had "unfettered access" to the books and records for nearly four months prior to the transaction closing. (Pl.'s Mem. in Opp'n, p. 20). In sum, Plaintiff argues that Defendants cannot establish that any reliance on the alleged misrepresentations was reasonable, and therefore Defendants' fraudulent inducement claim fails as a matter of law.

The Court finds that Sample's assertions, if true, set forth a defense of fraudulent inducement. Sample asserts that CAA and Whann significantly misrepresented the operating expenses and financial status of the auction business, and that his company relied upon these representations in deciding to enter into and close the transaction. Certainly, the financial condition of a business, including whether the business is operating at a profit or loss is material to any decision of another company to acquire the business. Plaintiff suggests that Defendants

were on equal footing regarding the financials of the auction business prior to the closing of the transaction. Sample, however, states that his company did not have complete control of, or full access to, the books and records of the acquired auction business. Thus, according to Sample's statements, the parties were not on equal footing because the true facts were not accessible to his company. Moreover, while Sample has extensive experience in the automobile and truck industry, which would seem relevant to the reasonableness of his reliance on the asserted operating expenses of the auction business, that experience does not *per se* preclude, or deem as unreasonable, his reliance on representations of agents of the auction business he sought to acquire when he allegedly did not have full access to the financials of the business.

Based on these alleged operative facts, the Court finds that Defendants have alleged a meritorious defense. Accordingly, because Defendants have timely filed a motion for relief from cognovit judgment and alleged a meritorious defense, they are entitled to relief from cognovit judgment. Whether Defendants will ultimately prevail on this defense, however, is not a matter to be decided at this time. Furthermore, because Defendants allege at least one meritorious defense, it is unnecessary at this time to address the other possible defenses.

## III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Relief from Cognovit Judgment (Doc. 28). Accordingly, the cognovit judgments previously entered by this Court are hereby **VACATED**.

The Clerk shall remove Document 28 from the Court's pending motions list.

**IT IS SO ORDERED.**

***s/ George C. Smith***
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**